# UNITED STATES DISTRICT COURT
for the

Northern District of Iowa

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| | ) | Case No. |
| MATTHEW DERRICK GUTHRIE | ) | 19-mj-128 |
| and | ) | |
| TRACI LYNN GUTHRIE | ) | |
| | ) | |

*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __March 2019 through April 2019__ in the county of __Webster__ in the __Northern__ District of __Iowa__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 USC 846 | conspiracy distribute controlled substance |

This criminal complaint is based on these facts:
see attached affidavit

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Robert A. Jones, Special Agent Iowa DNE
*Printed name and title*

☐ Sworn to before me and signed in my presence.

☑ Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone or other reliable electronic means.

Date: April 16, 2019

_____
*Judge's signature*

Northern District of Iowa

Kelly K.E. Mahoney, U.S. Chief Magistrate Judge
*Printed name and title*

# Affidavit

I, Special Agent Robert Jones, duly sworn upon oath do solemnly states as follows:

1. I have been employed as a sworn peace officer by the Department of Public Safety (DPS) since November, 1990. After completion of the DPS academy, my first assignment with the DPS was as an Officer with the Capitol Police Division located in Des Moines, Iowa. In July, 1992 I was promoted and transferred to the Iowa State Patrol as a State Trooper. During my 15 years with the Iowa State Patrol I was involved in numerous drug related investigations and attended several narcotics identification and interdiction classes including a class sponsored by the United States Department of Transportation and the Oklahoma Highway Patrol. In May of 2007, I was promoted and transferred to the Iowa Division of Narcotics Enforcement (DNE) as a Special Agent assigned to the Denison, Iowa, field office. As a Special Agent with DNE I have been involved with numerous drug investigations involving violations of Iowa state drug laws and Title 21 of the United States Code. I have been tasked at the case agent for state and federal drug conspiracy, manufacturing, distribution, trafficking, and prohibited person in possession of firearms cases. These investigations have resulted in the execution of both State and Federal search warrants. My training as a Special Agent has included a course in identification, investigation, and cleanup of clandestine laboratories, a two week United States Drug Enforcement Administration (DEA) basic narcotics school, an undercover techniques and survival school, an electronic surveillance school, a drug and contraband interdiction school, a post interdiction school, an indoor marijuana grow site safety school, and a one pot methamphetamine manufacturing school. I receive case law update classes on an annual basis. As a Special Agent, my specific duties include the covert and overt investigations of major drug traffickers.

1

2. I, along with other officers, have conducted an investigation into the distribution of methamphetamine in the Fort Dodge, Iowa area involving Matthew Derrick GUTHRIE and Traci Lynn GUTHRIE. As part of this investigation, officers conducted controlled buys of methamphetamine from both Matthew Derrick GUTHRIE and Traci Lynn GUTHRIE and executed a search warrant at GUTHRIE's residence, located at 2579 225th Street, Fort Dodge. From my personal observations, interviews and upon information provided to me by other law enforcement officers and agents, I have learned the following:

3. On March 5, 2019, I conducted an interview with Division of Narcotics Enforcement Confidential Source #4692, hereafter referred to as CS. It should be noted that the CS is a methamphetamine addict with an extensive drug related criminal history dating back to 1994 which includes felony convictions. The CS is currently on state probation and is cooperating with law enforcement in consideration of charges. The CS stated that the CS has purchased quarter ounce (1/4 oz) to half ounce (1/2 oz) quantities of methamphetamine every five (5) days for the past five (5) to six (6) weeks from a white male known to the CS only as "Jeremy." The CS stated that "Jeremy" charges the CS two hundred and fifty dollars ($250) for a quarter ounce (1/4 oz) and four hundred and twenty five dollars ($425) for a half ounce (1/2 oz) of methamphetamine. The CS described "Jeremy" as a bald white male, approximately thirty (30) to thirty five (35) years of age who lives in Fort Dodge, Iowa, and drives a "red Chevy pickup with a slight lift". The CS stated that the methamphetamine transactions usually take place in random parking lots in Fort Dodge that "Jeremy" chooses. The CS stated that "Jeremy" usually arrives alone but has had a white female with him on one (1) occasion. Jeremy was later identified as being Matthew Derrick GUTHRIE of Fort Dodge, Iowa.

4. On Friday, March 8, 2019, I controlled the CS during the purchase of a half-ounce (1/2 oz) of methamphetamine from Matthew Derrick GUTHRIE for four hundred dollars ($400) in pre-serialized United States Currency. The transaction took place in parking lot #9 on the Iowa Central Community College (ICCC) campus located at One Triton Circle in Fort Dodge, Iowa. I searched the CS and the CS's vehicle prior to the transaction and provided the CS with the aforementioned four hundred dollars ($400). Prior to the transaction Matthew GUTHRIE told the CS that he was in the Coalville area and it was agreed by Matthew GUTHRIE and the CS that they would meet "at the same location as last time," being parking lot #9 on the ICCC campus. Special Agent Bryant Strouse of the Division of Narcotics Enforcement observed a red/maroon Chevy pickup bearing Iowa license plate CXJ952, registered to Matthew Derrick GUTHRIE, traveling towards where the CS was parked. I observed the driver, and sole occupant, of the red/maroon Chevy pickup meet with the CS and conduct the methamphetamine transaction in the CS's vehicle. I maintained surveillance on the CS before, during, and after the transaction until meeting with the CS afterwards and taking control of the purchased methamphetamine. I again searched the CS and the CS's vehicle. The CS identified a photograph of Matthew Derrick GUTHRIE as who the CS knew as "Jeremy" and who the CS had purchased the methamphetamine from. The aforementioned transaction with Matthew GUTHRIE was audio recorded and photographed by your affiant.

5. On Monday, March 18, 2019, an agent, acting in an undercover capacity (UC), accompanied the CS during the purchase of one and a half ounces (1 ½ oz) of methamphetamine for one thousand dollars ($1,000) in pre-serialized United States Currency. The transaction took place in the *Menards* parking lot located at 3319 5th Avenue South in Fort Dodge, Iowa. At or about 10:25 a.m., Special Agent Strouse began conducting

3

surveillance on the residence listed on GUTHRIE's driver's license, being
2579 225th Street, Fort Dodge, Iowa. The owner of the residence is listed
as being Traci GUTHRIE on the Beacon public website. Special Agent
Strouse observed Matthew GUTHRIE's 2004 Chevy pickup parked near
the residence and Matthew GUTHRIE outside working on the pickup.
The CS and the CS's vehicle were searched prior to the transaction. I
provided the UC with the aforementioned one thousand dollars ($1,000)
prior to the UC and the CS traveling to Fort Dodge together. At or about
11:50 a.m., Matthew GUTHRIE called the CS and directed the CS to
travel to the *Menards* parking lot. At or about 12:04 p.m., Matthew
GUTHRIE told the CS, via text messaging, that he was going to have his
wife deliver the methamphetamine. Special Agent Strouse then observed
Matthew GUTHRIE enter the residence through a door on the north side
of the residence. The CS advised Matthew GUTHRIE that the CS had one
thousand dollars ($1,000) via text messaging. It was agreed that Matthew
GUTHRIE would sell the CS forty two grams (42 gm) of
methamphetamine for one thousand dollars ($1,000). At or about 12:27
p.m., Special Agent Strouse observed a red Chevy Suburban arrive at the
residence driven by a white female who also entered the north door of the
residence. At or about 12:40 p.m., Special Agent Strouse observed the
female exit the residence and depart in the red Suburban, stopping at the
mailbox to check the mail before proceeding west on 225th Street towards
Fort Dodge. At the same time Matthew GUTHRIE called the CS stating
that his wife was on the way in a red Suburban and directed the CS to
park in the east part of the *Menards* parking lot near the lumberyard
entrance. At or about 12:48 p.m., I observed a red 2004 Chevy Suburban
bearing Iowa license plate FOP671, registered to Traci Lynn GUTHRIE,
arrive and park next to the CS vehicle. I observed the CS enter the
Suburban to complete the transaction. At or about 12:56 p.m., I followed
the CS and the UC away from the *Menards* parking lot and met with

4

them at a prearranged location. I took possession of the purchased
methamphetamine from the UC. The UC stated that the UC was able to
observe and hear the transaction take place due to the windows in both
vehicles being partially rolled down. The UC identified a photograph of
Traci Lynn GUTHRIE as the person who had delivered the
methamphetamine. The transaction and phone conversations were audio
recorded and I documented the text messages between the CS and
Matthew GUTHRIE.

6. On Monday, March 25, 2019, the UC purchased three ounces (3 oz) of
methamphetamine from Matthew GUTHRIE for one thousand eight
hundred dollars ($1,800) in pre-serialized United States Currency. The
transaction took place in the *Menards* parking lot located at 3319 5th
Avenue South in Fort Dodge, Iowa. At or about 12:27 p.m., Special Agent
Strouse began surveillance on GUTHRIE'S residence, located at 2579
225th Street in Fort Dodge. Special Agent Strouse observed Matthew
GUTHRIE outside working on his red/maroon 2004 Chevy Silverado as
the UC finalized the arrangements for the UC to purchase three ounces (3
oz) of methamphetamine from Mathew GUTHRIE for one thousand eight
hundred dollars ($1,800). At or about 1:53 p.m., Special Agent Strouse
observed Traci GUTHRIE arrive in her red 2004 Chevy Suburban and
enter the residence. At or about 2:03 p.m., Matthew GUTHRIE sent the
UC a text message stating that he only had two (2) of the three (3) ounces
of methamphetamine on hand but would have the other ounce in
approximately five (5) minutes. At or about 2:13 p.m., Special Agent
Strouse observed Traci GUTHRIE exit the residence and depart in the
Suburban. At or about 2:28 p.m., Special Agent Strouse observed
Matthew GUTHRIE exit the residence and walk to his red/maroon
Silverado. At or about 2:35 p.m., the UC received a text message from
Matthew GUTHRIE which stated that he would see the UC in a minute.
At or about 2:40 p.m., Matthew GUTHRIE arrived at *Menards* and met

5

with the UC. The UC then purchased three ounces (3 oz) of methamphetamine from Matthew GUTHRIE for one thousand eight hundred dollars ($1,800) Matthew GUTHRIE's Silverado. Matthew GUTHRIE stated that he would sell the UC as much methamphetamine as the UC had the money for. The text messages and phone conversations leading up to the transaction, as well as the transaction itself, were documented and recorded.

7. At or about 12:09 p.m., on Monday, April 8, 2019, the UC asked Matthew GUTHRIE, via coded text messaging, if Matthew GUTHRIE had the methamphetamine in order to complete the next transaction.

8. At or about 12:04 a.m., on Tuesday, April 9, 2019, Matthew GUTHRIE told the UC, via coded text messaging, that he could sell the UC four ounces (4 oz) before lunch and then sell him another four ounces (4 oz) after lunch that day. It was agreed by the UC and Matthew GUTHRIE, via text messaging, that the transaction would take place the following day and that the UC would advise Matthew GUTHRIE when he was traveling towards Fort Dodge.

9. At or about 12:55 p.m., on Wednesday, April 10, 2019, Special Agent Strouse began surveillance on GUTHRIE's residence and observed Matthew GUTHRIE's 2004 red/maroon Chevy Silverado parked at the residence. At or about 1:01 p.m., the UC advised Matthew GUTHRIE, via text messaging, that he was on his way to Fort Dodge. Matthew GUTHRIE advised the UC, via coded text messaging, that he was waiting on the methamphetamine to be delivered. At or about 1:07 p.m., Special Agent Strouse observed a white Ford Expedition bearing temporary dealer registration arrive at GUTHRIE's residence. It's known by law enforcement that Traci GUTHRIE was driving the Expedition. It was also known by officers that Traci GUTHRIE was employed by Fort Dodge Ford and had access to numerous vehicles. Special Agent Strouse observed Traci GUTHRIE enter the residence. At or about 1:42 p.m., Special Agent

6

Strouse observed Matthew GUTHRIE exit the residence and depart in his red/maroon 2004 Chevy Silverado. Surveillance officers observed Matthew GUTHRIE stop a short distance from his house and return to the residence a couple times. At or about 2:38 p.m., Special Agent Strouse observed Matthew GUTHRIE depart his residence in the Silverado. Surveillance officers observed Matthew GUTHRIE driving around several locations in Fort Dodge. It appeared as if Matthew GUTHRIE was conducting counter surveillance. Surveillance officers observed Matthew GUTHRIE pick up a child at the middle school. Surveillance officers observed Matthew GUTHRIE then drive through an apartment complex as if looking for a vehicle. Surveillance officers then observed Matthew GUTHRIE pick up a child at the high school. Matthew GUTHRIE then drove to *Walmart* and entered with the two (2) children at or about 3:47 p.m. At or about 4:29 p.m., Surveillance officers observed Matthew GUTHRIE and the two (2) children exit *Walmart* and enter the Silverado. Surveillance officers observed Matthew GUTHRIE drive near two (2) surveillance vehicles before departing the area. I then directed surveillance officers to terminate surveillance on Matthew GUTHRIE due to him apparently conducting counter surveillance. At or about 5:13 p.m., Special Agent Strouse observed Matthew GUTHRIE idling at an extremely slow rate of speed towards his residence. Special Agent Strouse observed Matthew GUTHRIE drive back and forth a couple times in front of his residence before backing in the residence drive and parking next to a large tent that's erected on the property at or about 5:23 p.m. Special Agent Strouse observed the two (2) children enter the residence and Matthew GUTHRIE enter the tent. At or about 5:30 p.m., I terminated surveillance.

10. On the morning of Thursday, April 11, 2019, I met with CS #4692. The CS stated that Matthew GUTHRIE had called the CS the previous evening from a new cellular telephone number (515-269-2094). The CS

7

stated that Matthew GUTHRIE told the CS that Matthew GUTHRIE had not completed the methamphetamine transaction with the UC due to Matthew GUTHRIE observing several undercover officers following him. At or about 12:51 p.m., I directed the CS to place a recorded call to Matthew GUTHRIE utilizing the new number of 515-269-2094. Matthew GUTHRIE began the conversation talking in code and stated that the cocaine that he had mentioned to the CS the previous evening was one hundred and eighty ($180) to two fifty ($250) per eighth ounce (1/8th oz) depending on the quality. Matthew GUTHRIE stated that he had not completed the methamphetamine transaction with the UC the previous day due to undercover officers following him around Fort Dodge. Matthew GUTHRIE stated that he had gotten concerned and changed his phone number. Matthew GUTHRIE directed the CS to let the UC know why he had not completed the transaction and that he would contact the UC at a later date to arrange another transaction.

11. On the afternoon of April 15, 2019, Special Agent Strouse was conducting surveillance of Matthew Derrick GUTHRIE. Special Agent Strouse was in a fixed surveillance position approximately one (1) mile south of GUTHRIE's residence. Special Agent Strouse was in a position to view GUTHRIE's residence from afar and observe traffic coming and going from GUTHRIE's residence. After sitting in the surveillance position for approximately ten (10) minutes, Special Agent Strouse observed a red/maroon Silverado truck approach Special Agent Strouse. Special Agent Strouse immediately identified the truck as Matthew GUTHRIE's vehicle. Matthew GUTHRIE parked his truck behind Special Agent Strouse's vehicle, which was pulled into a farm field access point. Matthew GUTHRIE exited his vehicle and approached Special Agent Strouse. Matthew GUTHRIE stood at Special Agent Strouse's front passenger window and asked Special Agent Strouse what Special Agent Strouse was doing. Special Agent Strouse stated he was looking at the

8

field. Matthew GUTHRIE told Special Agent Strouse he knew who Special Agent Strouse was and he knew the police were watching him. Matthew GUTHRIE asked what Special Agent Strouse wanted. Special Agent Strouse then identified himself as a peace officer to Matthew GUTHRIE. Matthew GUTHRIE again asked Special Agent Strouse "who do you want?" Special Agent Strouse informed Matthew GUTHRIE Special Agent Strouse wished to speak with Matthew GUTHRIE but was not going to have that conversation in the road by the field. Matthew GUTHRIE stepped away from Special Agent Strouse's vehicle and approached Matthew GUTHRIE's vehicle. Special Agent Strouse was immediately concerned for his safety as Matthew GUTHRIE was known to carry firearms and has conviction for felon in possession of a firearm. Special Agent Strouse directed Matthew GUTHRIE to stay out of his truck. Matthew GUTHRIE then entered his vehicle. Matthew GUTHRIE refused to follow Special Agent Strouse's command to remain outside the truck. Matthew GUTHRIE then quickly departed the area. Special Agent Strouse then followed Matthew GUTHRIE as Matthew GUTHRIE departed the area and drove towards Matthew GUTHRIE's residence. Matthew GUTHRIE arrived at his residence and parked in the driveway. Special Agent Strouse remained at a relatively safe distance away from Matthew GUTHRIE (at the end of GUTHRIE's driveway). Special Agent Strouse gave numerous commands to Matthew GUTHRIE to walk towards Special Agent Strouse. Matthew GUTHRIE did not obey any commands given by Special Agent Strouse. Special Agent Strouse then made contact with State Radio and requested assistance from other officers.

12. Numerous marked patrol vehicles and sworn law enforcement responded to GUTHRIE's residence. Law enforcement made contact with Matthew GUTHRIE who as standing outside GUTHRIE's residence. Law enforcement gave Matthew GUTHRIE numerous commands to walk

9

towards law enforcement while keeping his hands visible. Matthew GUTHRIE did not obey any commands given by law enforcement.

13. After several minutes, Traci Lynn GUTHRIE arrived at GUTHRIE's residence and was hysterical. Special Agent Strouse and other officers made contact with Traci GUTHRIE as she drove up to her residence and parked. Traci GUTHRIE appeared to be on the phone with Matthew GUTHRIE. Traci GUTHRIE did not obey commands to put her vehicle (a silver Ford Fusion with temporary dealer tags) into park. When officers attempted to speak with Traci GUTHRIE she rolled up her window and remained on the phone with Matthew GUTHRIE. Eventually, Special Agent Strouse spoke with Traci GUTHRIE. Traci GUTHRIE stated the silver Ford Fusion was her car that she got from work. Traci GUTHRIE stated she didn't know anything about methamphetamine and had no involvement with the distribution of methamphetamine. Traci GUTHRIE stated Matthew GUTHRIE also had no involvement in the distribution of methamphetamine. The decision was made to place Traci GUTHRIE under arrest for delivery of a schedule II controlled substance. Traci GUTHRIE was arrested and transported to the Webster County Jail.

14. Eventually, after several hours, officers attempted to take Matthew GUTHRIE into custody. Matthew GUTHRIE attempted to flee from the officers positioned near his residence. Less lethal munitions (chemical rounds) were fired into Matthew GUTHRIE's red/maroon Silverado and spike strips were deployed in an attempt to avoid a pursuit. Matthew GUTHRIE drove over the spike strips and fled away from his residence into a farm field. Officers then made contact with Matthew GUTHRIE inside his truck, which was parked in the middle of a farm field. Officers attempted to take Matthew GUTHRIE into custody. Matthew GUTHRIE was combative and assaultive towards officers. Matthew GUTHRIE was non-compliant and officers struggled with Matthew GUTHRIE to remove him from his vehicle. Officers deployed a Taser stun on Matthew

10

Case 1:19-mj-00128-KEM   Document 1   Filed 04/16/19   Page 11 of 13

GUTHRIE in an attempt to take Matthew GUTHRIE into custody. After a struggle, Matthew GUTHRIE was taken into custody and transported to the Hamilton County Jail.

15. Law enforcement agents then executed a search warrant related to this case. At 2579 225th Street, Fort Dodge, Iowa, the known residence of Matthew Derrick GUTHRIE and Traci Lynn GUTHRIE, agents located about ¼ ounce of methamphetamine, about one ounce of suspected cocaine, numerous firearms (to include a Cobra .380 handgun, a tactical 12 gauge shotgun, an additional shotgun, and a .22 rifle), hundreds of rounds of ammunition, and numerous drug paraphernalia items indicative of drug use and distribution to include packaging and scales. In the silver Ford Fusion with temporary tags operated by Traci Lynn GUTHRIE, officers located and seized approximately one (1) ounce of methamphetamine, a digital scale, and drug paraphernalia in a makeup bag in the glove box of the silver Ford Fusion; and a loaded 9mm handgun and $3,531.00 of U.S. currency in a purse on the seat of the silver Ford Fusion.

16. The undersigned agent asserts the quantities of drugs, methods of storage and packaging and presence of firearms are all consistent with a conspiracy to distribute methamphetamine and cocaine.

17. Based on the above, the undersigned believes that there is probable cause to believe that Matthew Derrick GUTHRIE and Traci Lynn GUTHRIE are involved in a conspiracy to distribute methamphetamine, in violation of Title 21 USC, Section 846, in the Northern District of Iowa.

_____
Robert Jones, Special Agent
Iowa Division of Narcotics Enforcement

11

Subscribed and sworn to before me, this the 16th day of April, 2019, via telephone or other reliable electronic means pursuant to Rule 4.1 of the Federal Rules of Criminal Procedure.

*Kelly K.E. Mahoney*
Kelly K.E. Mahoney
United States Chief Magistrate Judge
Northern District of Iowa